# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF LAW** |
| ) | |
| v. ) | |
| ) | Case No. <u>4:24-cv-729</u> |
| ORLANDO ASKINS, THE ASKINS ) | |
| DEVELOPMENT GROUP, LLC, and SHAW ) | |
| HOLDING GROUP LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THE UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION RESTRAINING DEFENDANTS FROM UNLAWFUL RENOVATION ACTIVITIES**

Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), respectfully submits this memorandum of law and the accompanying declarations and exhibits in support of the United States' motion for a preliminary injunction to restrain Defendants Orlando Askins, The Askins Development Group, LLC, and Shaw Holding Group LLC, from unlawfully performing renovation activities that disturb lead-based paint in residential buildings built prior to 1978. Over the last decade, despite EPA's repeated efforts to bring them into compliance, Defendants have performed at least eight such renovations in violation of nearly every applicable provision of Toxic Substances Control Act ("TSCA") regulations designed to protect human health and the environment from the dangers of lead-based paint dust and debris.  Defendants persist in their illegal conduct to this day, and unless restrained by this Court, will continue causing irreparable harm to human health and the environment through their TSCA violations.

## I.     BACKGROUND

### A.     Defendants

Defendants are an individual, Mr. Orlando Askins ("Askins"), who has formed more than forty businesses in the State of Missouri for the purpose of performing renovations primarily on residential buildings built prior to 1978,[1] and two of these businesses, The Askins Development Group, LLC ("Askins Development") and Shaw Holding Group LLC ("Shaw").

Defendant Askins performs renovations in St. Louis, Missouri both in his own capacity and through the other two Defendants, of which he is the principal. Defendant Askins Development was a Missouri limited liability company that Defendant Askins formed in 2006

---

[1] See Declaration of Cassandra Mance, EPA Life Scientist, at ¶ 14.

1

and terminated on November 7, 2022.  See Ex. 1 at 4-5.  Under Missouri law, claims may still be made against Askins Development until three years after its termination.  Mo. Rev. Stat. § 347.141(4).  Defendant Shaw is a Missouri limited liability company.  See Ex. 2 at 3.

### B. Statutory and Regulatory Background

TSCA addresses the manufacturing, processing, distribution, use and disposal of potentially harmful chemicals.  See 15 U.S.C. §§ 2601-2629.  In 1992, Congress amended TSCA by adding Title IV ("Lead Exposure Reduction") to, among other things, "ensure that . . . lead-based paint hazards are taken into account in the … renovation of homes and apartments." 42 U.S.C. § 4851a.  Lead poisoning poses significant health risks, particularly to children, for whom ingestion of "household dust containing lead from deteriorating or abraded lead-based paint is the most common cause of lead poisoning."  42 U.S.C. § 4851(4).  Even "at low levels, lead poisoning in children causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems."  Id. at (2).

Pursuant to Section 402(c) of TSCA, 15 U.S.C. § 2682(c), EPA promulgated the Lead Renovation, Repair and Painting ("RRP") Rule, 40 C.F.R. Part 745 Subpart E.  The RRP Rule establishes certification requirements for individual renovators and renovation firms and mandates lead-safe work practice standards for regulated renovations performed for compensation on "Target Housing," i.e. housing constructed before 1978 (when consumer use of lead paint was banned), with certain exceptions not applicable here.  See 15 U.S.C. § 2681(17); 40 C.F.R. § 745.83.  The RRP Rule requires, inter alia, that renovation firms obtain EPA certification before performing, offering, or claiming to perform renovations for compensation; assign certified renovators to direct and oversee renovations; contain, collect, and prevent the escape of dust and debris from leaving the work area; and permit the reasonable entry or

inspection of renovation sites by EPA-credentialed inspectors. See 40 C.F.R. §§ 745.81, 745.85, 745.87, 745.89; see also 40 C.F.R. § 745.90 (setting forth obligations of certified renovators).

The RRP Rule focuses on renovations that disturb painted surfaces in Target Housing because such activity can produce lead dust that can be suspended in the air and dust and paint chips that can be deposited inside or tracked into homes. Ingestion of lead-contaminated dust is a major contributor to elevated blood lead levels in children, particularly those who reside in homes built prior to 1978. 88 Fed. Reg. 50444, 50448 (August 1, 2023) (EPA Proposed Rule on Reconsideration of the Dust-Lead Hazard Standards and Dust-Lead Post Abatement Clearance Levels). Infants, toddlers, and young children can be exposed to lead through dust and chips on floors because they commonly crawl on floors and often put their hands and other objects that can have lead from dust on them into their mouths. Id. at 50447.

Failure or refusal to comply with the RRP Rule is unlawful and is a violation of Section 409 of TSCA, 15 U.S.C. § 2689. Federal district courts have jurisdiction to restrain any violation of Section 409 of TSCA, 15 U.S.C. § 2689, and to compel actions required by Subchapter IV ("Lead Exposure Reduction") of TSCA. 15 U.S.C. § 2616(a)(1)(A) and (C).

## II.   DEFENDANTS' VIOLATIONS OF TSCA AND THE RRP RULE

A firm must be certified in order to perform, offer, or claim to perform, renovations for compensation on Target Housing and it must assign certified renovators to all renovations of Target Housing. 40 C.F.R. §§ 745.81(a)(2)(ii); 745.89(a)(1), 745.89(d)(2). None of the Defendants is or ever has been an EPA-certified renovation firm as required by 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1). Declaration of Cassandra Mance, EPA Life Scientist, Dkt. 2-3 ("Mance Decl.") ¶ 10. Defendant Askins was not a certified renovator under 40 C.F.R. § 745.90 until April 2023. Id. ¶ 11.

3

Notwithstanding their lack of firm certification from EPA, in the last decade, the Defendants have conducted renovations on more than 65 homes that are Target Housing and Defendant Askins has used other corporate entities to conduct renovations on at least another 19 such homes.  Mance Decl. ¶¶ 13-14.  EPA inspected, attempted to inspect, or investigated eight of Defendants' renovation projects in St. Louis, Missouri between 2015 and 2024 and found that Defendants had failed to comply with nearly every applicable provision of the RRP Rule.

### A.     Violations at 3819-3821 Shaw Blvd.

On August 13, 2015, EPA conducted a work practices inspection of ongoing renovations at 3819-3821 Shaw Blvd., a vacant residential property built in 1917, see Ex. 3 at 1, then owned by Defendant Shaw.  Declaration of Candace Bednar, Chief of the Chemical Branch in the Enforcement and Compliance Assurance Division ("ECAD"), EPA Region 7, Dkt. 2-4 ("Bednar Decl.") ¶¶ 13-14.  Defendant Askins identified himself as the manager of the renovation project and gave permission for the inspectors to enter and inspect the site.  Id. ¶ 15.  The inspectors found that Shaw and Askins were violating nearly every applicable work practice.  Id. ¶ 16; see also Ex. 4 at 11-15.  There was no certified renovator assigned to the project, as required by 40 C.F.R. § 745.89(d)(2), and no signs were posted defining the work area and warning non-workers to remain outside the work area, as required by 40 C.F.R § 745.85(a)(1).  Ids. Moreover, Shaw and Askins had taken no steps to contain dust and debris from the renovations as required by the RRP Rule: doors and windows remained open and unsealed, the ground was not covered with plastic sheeting or other disposable impermeable material, and paint chips from the renovation work were visible on the bare ground.  Ids.; 40 C.F.R. §§ 745.85(a)(2)(ii)(A), (C).

The inspectors conducted a closing conference with Askins at the end of the inspection, during which they reviewed the potential violations they had observed and explained how to

4

avoid them in the future.  Bednar Decl. ¶ 17.  They also provided Askins with a variety of written material regarding lead poisoning and RRP and Disclosure Rule requirements.  Id.

In February and March 2017, an EPA inspector attempted to physically serve Eric Benford, the registered agent for Shaw and 34 other companies associated with Askins, with ten administrative subpoenas regarding Shaw and other Askins-associated LLCs.  Declaration of Thomas Brick, Senior Environmental Employment grantee, EPA Region 7, Dkt. 2-5 ("Brick Decl.") ¶¶ 11-12; Mance Decl. ¶ 16.  The EPA inspector eventually spoke with Mr. Benford at his home on March 1, 2017, where he refused to accept service and said that he did not know he was listed as a registered agent for any company associated with Askins.  Brick Decl. ¶¶ 14-17.  He provided a written statement that his "only relationship with Mr. Atkins [sic] was as a handyman.  I haven't seen or heard from Mr. Atkins in 6 years."  Id. ¶ 18; Ex. 5 at 2.  Shaw's Missouri corporate registration was cancelled on December 27, 2017, for failure to have a registered agent.  See Ex. 2 at 3-4.  On March 8, 2018, after submitting a bona fide registered agent, Shaw was reinstated.  Id. at 1-2.

      **B.**     **Violations at 3429 Missouri Ave.**

In March 2016, neighbors of 3429 Missouri Ave. complained to the City of St. Louis and EPA about renovations being conducted there by Askins and Askins Development.  Bednar Decl. ¶ 19.  EPA investigated the property, built in 1879, see Ex. 6 at 1, on or about March 15, 2016, that identified potential violations of the RRP Rule, including failure to post signs warning of the renovation activity and failing to properly clean up and dispose of renovation debris such as paint chips.  Bednar Decl. ¶¶ 20-22; Ex. 7.  Following its investigation, EPA commenced an administrative penalty action against Askins Development.  See Compl. Att. A (In re: The Askins Development Group, LLC, Dkt. No. TSCA-07-2019-0280 (EPA Region 7), Initial Decision and

5

Default Order) at § IV, ¶¶ 2, 22-25.  Although Askins Development initially participated in this proceeding, it did not respond to a scheduling order and was found to be in default after its unsuccessful objections to a show cause order.  Id. § III. The EPA Regional Judicial Officer entered an Initial Decision and Default Order, rejecting the opposition to default, entering default judgment for $42,003 in administrative penalties, and finding that Askins Development had, on various dates, violated Section 409 of TSCA, 15 U.S.C. § 2689, by 1) failing to apply for EPA firm certification before performing the renovation, in violation of 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1); 2) failing to ensure all renovations by the firm were performed in accordance with lead-safe work practices set forth in 40 C.F.R. § 745.85, in violation of 40 C.F.R. § 745.89(d)(3).  Id. at § IV, ¶¶ 29-78, § V.  In particular, the EPA Regional Judicial Officer found that Askins Development had failed to: close windows and doors in the work area, contain renovation waste to prevent the release of dust and debris before removal from the work area for storage or disposal,[2] collect renovation waste at the end of each work day and contain or otherwise store it in a way that prevents the release of dust and debris, and post signs clearly defining the work area and warning occupants and other persons not involved in the renovation to remain outside the work area.  Ids.

      The EPA Environmental Appeals Board ("EAB") issued an Order Declining to Exercise Sua Sponte Review, see Compl. Att. B, rendering the Initial Finding and Default Order a final order as of November 10, 2022, see 40 C.F.R. § 22.27(c).  This final order is res judicata as to Askins Development, conclusively establishing the violations found by the EPA Regional Judicial Officer for purposes of this civil action.  See U.S. v. Utah Constr. & Mining Co., 384

---

[2] The EPA Regional Judicial Officer found that dust and debris had been released to adjacent property, as depicted in video taken by the complaining neighbor.  Id. ¶¶ 42, 46, 50, 60.

U.S. 394, 422 (1966) (holding that res judicata applies to decisions of administrative agencies when acting in a judicial capacity); cf. Kapp v. Naturelle, Inc., 611 F.2d 703, 707 (8th Cir. 1979) (If entered by a court with jurisdiction "and absent fraud or collusion, even a default judgment operates as res judicata and is conclusive of whatever is essential to support the judgment.").

        C.      **Violations at 3537 California Ave.**

On May 19, 2021, EPA inspectors conducting random, unannounced inspections in St. Louis, Missouri, observed that renovations were underway at 3537 California Ave. Declaration of William Blair, EPA Life Scientist, Dkt. 2-6 ("Blair Decl.") ¶ 9; Bednar Decl. ¶ 23; Brick Decl. ¶ 19. Shaw owned the building, constructed in 1903, see Ex. 8 at 1, and had obtained the building permit for the renovations. Blair Decl. ¶¶ 9, 16. Multiple violations of the RRP Rule were already visible to the inspectors. There was no plastic sheeting or impermeable material on the ground, and renovation debris was present in the front lawn, on the public sidewalk, and uncontained in an open dumpster. Id. ¶ 10; see 40 C.F.R. §§ 745.85(a)(2)(ii)(C); 745.85(a)(4)(i). There were no signs posted defining the work area and warning non-workers to stay out of the work area. Blair Decl. ¶ 10; 40 C.F.R. § 745.85(a)(1). Indeed, a child was playing on the sidewalk in front of the house. Id. The inspectors' photographs illustrate these violations. Id. ¶¶ 7.a, 18; Ex. 9 at 9-79. The inspectors put up caution tape around the debris and planned to return for a full inspection the next day. Blair Decl. ¶ 11.

When they arrived at the site on May 20, the inspectors observed that the caution tape they had placed around the visible debris on the ground had been moved, leaving the debris untouched. Blair Decl. ¶ 12. Workers, stepping around the debris, carried yet more debris in uncovered buckets to a waiting uncovered dumpster, id., in violation of 40 C.F.R § 745.85(a)(4)(i). The inspectors attempted an inspection but were told to contact Askins, the

7

manager, to schedule one. Id. at ¶ 13. A worker gave them Askins Development's business card and the inspectors arranged to meet Mr. Askins at the work site later that day. Id.

Mr. Askins met the inspectors at the site but, although he admitted he had the necessary authority, expressly declined to permit an inspection, id. ¶ 14, in violation of Section 409 of TSCA, 15 U.S.C. § 2689, and 40 C.F.R. § 745.87(c). The inspectors gave Mr. Askins instructions on what he needed to do to bring the renovation into compliance with lead-safe work practices before they left. Id. ¶ 15. Mr. Askins told them he would implement these lead-safe work practices immediately. Id.

When the inspectors returned on May 21, they observed that Mr. Askins had not, despite his statement, implemented any lead-safe work practices. Blair Decl. ¶ 17. To the contrary, Defendants were committing the same violations the inspectors had seen on May 19 and May 20. See Id. In fact, the inspectors could observe visible dust clouds emerging from the work area from an open dumpster as well as uncontained debris on the lawn, sidewalk, and street. Id.; see also Ex. 9 at 37 (photo P5190690), 43 (photo P5190696), 45 (photo P5190703).

**D.  Violations at 3330 Illinois Ave.**

On March 15, 2023, EPA inspectors observed ongoing renovations at 3330 Illinois Ave. Blair Decl. ¶ 19. 3330 Illinois Ave. was constructed in 1904. Ex. 10 at 1. The inspectors saw uncontained painted renovation debris on the bare ground around the property and in an open dumpster, in violation of 40 C.F.R. §§ 745.85(a)(2)(ii)(C) and (4)(i). See Ex. 11 at 2; Blair Decl. ¶ 20. Defendant Shaw owned the property and held the work permit and Askins, who was not present on-site, had hired the workers who were performing the renovation. Id. ¶ 21.

When the inspectors reached Askins by phone to seek permission to perform an inspection, Mr. Askins refused. Blair Decl. ¶ 22. He told them they could only inspect if he

8

were present.  Id.  He then refused to make himself available for such an inspection for the remainder of the week.  Id.  Askins acknowledged that this refusal could constitute unlawful denial of access for an inspection, in violation of Section 409 of TSCA, 15 U.S.C. § 2689 and 40 C.F.R. § 745.87(c).  Id. ¶ 23.  Following the inspection, EPA issued a written subpoena to Askins pursuant to Section 11(c) of TSCA, 15 U.S.C. § 2610(c), via certified mail to Mr. Askins' home address.  Bednar Decl. ¶ 24; Ex. 12.  Askins has never responded to the subpoena.  Id. ¶ 25.

### E. Violations at 3331-3333 Nebraska Ave., 3237 California Ave., 2827 Oregon Ave., and 3330 Iowa Ave.

In March 2024, EPA inspectors learned that Shaw had recently obtained building permits for work at four of its properties located at 3331-3333 Nebraska Ave., 3237 California Ave., 2827 Oregon Ave., and 3330 Iowa Ave.  See Blair Decl. ¶¶ 25, 31, 38, 43; Brick Decl. ¶ 20.  The properties were built in 1906, 1890, 1884, and 1890, respectively.  Ex. 13 at 1; Ex. 14 at 1; Ex. 15 at 1; Ex. 16 at 1.  EPA attempted to inspect these properties on March 26 and 27, 2024, and returned to again attempt to inspect 3330 Iowa Ave. on April 3, 2024.  See Blair Decl. ¶¶ 25, 31, 38, 43, 46.  During these attempts, the EPA inspectors observed several violations of the RRP Rule.  They saw painted demolition debris on the bare ground at each property, in addition to no plastic sheeting or other impermeable material covering the ground and no signs posted defining the work area and warning persons not engaged in the renovation to stay out of the work area, in violation of 40 C.F.R. §§ 745.85(a)(1) and (a)(2)(ii)(C).  See Blair Decl. ¶¶ 26, 32, 39, 44, 46; Ex. 17 at 2-3.  Two of the properties also had an open dumpster containing painted demolition debris, in violation of 40 C.F.R. § 745.85(a)(4)(i).  Id. ¶¶ 29, 44, 46; Ex. 17 at 32-35, 71-72.  The inspectors spoke to workers at two properties, seeking permission for an inspection after presenting their credentials.  Blair Decl. ¶¶ 27, 33.  They were told to contact Askins by phone for permission.  Id. ¶ 27.  When they did so, Askins refused to permit inspection of "any" of his

9

properties in his absence, but declined to identify a time and date when he could be present, in violation of Section 409 of TSCA, 15 U.S.C. § 2689 and 40 C.F.R. § 745.87(c). Id ¶ 28.

### F. Likely Violations at 57 Additional Residential Properties

Since March 24, 2011, Defendants have taken out building permits for more than 65 residential buildings that were all built before 1978. Mance Decl. ¶ 13. As noted previously, none of the Defendants held a firm certification from EPA allowing them to offer, perform, or claim to perform, renovations on such Target Housing. If Defendants did so with respect to any of these additional properties for which they pulled renovation permits—and there is no indication they did not—they have violated 40 C.F.R. §§ 745.81(a)(2)(ii) and 745.89(a)(1) at least 57 additional times. Moreover, given the work practice violations that EPA inspections and investigations revealed at the eight properties EPA was able to observe, which persisted over a nine-year period despite EPA inspectors offering compliance assistance to Defendants and an EPA administrative enforcement action, it is likely that Defendants failed to comply with additional portions of the RRP Rule during the renovations at their other at least 57 properties.

### III. ARGUMENT

Because Defendants have committed multiple violations of TSCA and are likely to continue to do so, the United States is entitled to a preliminary injunction restraining Defendants, and anyone acting in concert or active participation with them, from continuing their unlawful TSCA-regulated lead-based paint renovation activities.

### A. Legal Standard

This Court has the jurisdiction to restrain any violation of Section 409 of TSCA, 15 U.S.C. § 2689, and to compel actions required by Subchapter IV ("Lead Exposure Reduction") of TSCA, including the RRP Rule promulgated thereunder. 15 U.S.C. § 2616(a)(1)(A) and (C).

10

The Court may enjoin not only Defendants, but also anyone "in active concert or participation" with Defendants.  See Fed. R. Civ. P. 65(d)(2).

The purpose of a preliminary injunction is to preserve the status quo between the parties pending a final determination on the merits.  See Rathmann Grp. v. Tanenbaum, 889 F.2d 787, 789-90 (8th Cir. 1989).  In considering a request for a preliminary injunction, courts in the Eighth Circuit ordinarily consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).

But where, as here, injunctive relief is expressly authorized by statute and the United States is acting in its role to enforce and implement Congressional policy, the United States is not required to show irreparable harm to obtain injunctive relief.  United States v. City of San Francisco, 310 U.S. 16, 30-31 (1940); Burlington N. Ry. Co. v. Bair, 957 F.2d 599, 601-02 (8th Cir. 1992).  Moreover, "because the availability of injunctive relief in the statute reflects a congressional finding that the balance of equities tips in favor of injunctive relief, the court need not balance the equities."  United States v. Shelton Wholesale, Inc., 34 F. Supp. 2d 1147, 1166 (W.D. Mo. 1999) (citing Hecht Co. v. Bowles, 321 U.S. 321, 331 (1944)), aff'd sub nom. Shelton v. Consumer Prod. Safety Comm'n, 277 F.3d 998 (8th Cir. 2002).  Indeed, in statutory injunction cases, "[t]he government meets its burden for injunctive relief upon establishing that a violation of the statute has occurred and that there is some likelihood that future violations may occur."  Id. at 1166-67 (issuing permanent injunction) (citing United States v. W.T. Grant, 345 U.S. 629, 632 (1953)); see also Buchanan v. Sullivan, No. 8:20-CV-301, 2021 WL 149052, at *2 (D. Neb. Jan. 15, 2021) (issuing preliminary injunction under the Telephone Consumer

11

Protection Act).  This is particularly true where the statute at issue, like TSCA, authorizes injunctive relief as the exclusive judicial remedy.  15 U.S.C. § 2616(a); see Bair, 957 F.2d at 603 (holding, in statutory injunction cases, that preliminary injunction proper upon showing of reasonable cause to believe violations had occurred and will recur where statute provides injunction as only form of judicial relief).

As shown below, the United States satisfies these elements and, accordingly, is entitled to a preliminary injunction.  Further, while the government is not required to show irreparable injury, Defendants' actions, if not restrained, will cause irreparable injury to the public.

**B.      The United States Has Substantial Likelihood of Success on the Merits that Defendants Have Violated TSCA.**

Section 409 of TSCA makes it unlawful for any person to fail or refuse to comply with the requirements of Title IV or with any regulation or order issued pursuant to its authority, including the RRP Rule.  Section 17(a)(1)(A) grants federal district courts jurisdiction over civil actions to "restrain any violation of [TSCA]."  15 U.S.C. § 2616(a)(1)(A) and (C).

As discussed above, Defendants have conducted illegal renovation work—because they lacked required EPA firm certification to perform renovations for compensation on Target Housing—at a minimum of eight, and likely more than sixty, known locations between March 2011 and the present.  See 15 U.S.C. § 2689; 40 C.F.R. §§ 745.81(a)(2)(i); supra § II.A-F.  Moreover, at the eight locations EPA inspected and/or investigated, Defendants had failed to comply with any of the applicable lead-safe work practice requirements of the RRP Rule.  See 15 U.S.C. § 2689; 40 C.F.R. §§ 745.85; 745.89(d)(3); supra § II.A-E.  At six of these locations, Defendants also unlawfully refused to allow an EPA inspection.  See 15 U.S.C. § 2689; 40 C.F.R. § 745.87(c); supra § II.C-E.  While the Court cannot yet make a merits finding, the

United States has provided sufficient evidence to show it is likely to succeed at the merits stage.

   C.   **The Violations Will Likely Recur Absent Injunctive Relief.**

   Defendants' history of failing to comply with TSCA requirements, attempting to evade transparency and responsibility, and continuing unlawful activity as recently as April 2024 demonstrate a likelihood that, absent a preliminary injunction, Defendants will continue to engage in unlawful renovation activities in St. Louis.

   As described above, Defendants' long history of noncompliance with TSCA and its regulations likely began as early as 2011, when Askins Development, which then, as now, lacked EPA firm certification, pulled a construction permit for renovation of Target Housing and presumably conducted the renovation. However, Defendants did not come to EPA's attention until August 2015, when EPA inspected 3819-3821 Shaw Blvd. Defendants' violations at that property extended far beyond their failure to hold firm certification to include every applicable aspect of the RRP Rule. See supra, § II.A. EPA found similarly extensive violations at each of the other properties it inspected and/or investigated. Id. §§ II.B-E.

   Moreover, Defendants ignored EPA's repeated direct instruction on how to comply with the RRP Rule during and after each inspection. See supra §§ II.A, C. They also rendered further EPA action nearly impossible by using as a registered agent someone who had no knowledge of their businesses and no capacity to accept service for them. Id. II.A. None of the Defendants has obtained EPA firm certification, yet they continue to perform renovations of Target Housing for compensation. While Askins Development, which has a default judgment against it, see supra § II.B, purports to be winding up its activities, see Ex. 1 at 2, Askins' corporations do not necessarily stay dissolved: Shaw's corporate registration was cancelled in December 2017, then reinstated in March 2018, see Ex 2 at 2-4, 6.

13

The Court should enjoin Defendants from continuing lead-based paint renovation activities regulated under TSCA because the United States has shown a likelihood of success on the merits (i.e., that Defendants have violated TSCA), and that such violations will recur.

### D. Although the United States Need Not Show Irreparable Harm, Defendants' Activities Pose an Imminent Threat of Irreparable Injury.

Congress and the Centers for Disease Control and Prevention have found that lead exposure has extremely harmful effects on human health, particularly in children. At each of the properties EPA inspected or investigated, potentially lead-contaminated dust and debris was unlawfully left uncontained in the open. See supra § II.A-E. Visible clouds of dust, likely containing lead paint dust, unlawfully emerged from two of these renovation sites. Id. §§ II.B n.2; II.C. The lead-safe work practices requirements of the RRP Rule are designed to prevent exactly these releases of potentially lead-contaminated material.

Defendants released lead-based paint dust and debris into the community by failing to ensure that their workers follow the lead-safe work practices required by the RRP Rule. If Defendants continue their unlawful renovation activities, they will continue to pose an ongoing health threat to individuals in the community, particularly children.

### E. Defendants Must be Restrained from Using Other Corporate Forms to Evade An Injunction.

The Court should issue an injunction that prevents Defendants from using any of the other at least forty entities they have formed, or may form in the future, to evade its requirements. See Fed. R. Civ. P. 65(d)(2); Indep. Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998) ("a nonparty with actual notice may be held in contempt where the nonparty aids or abets a named party in a concerted violation of a court order."). Its authority to do so extends not only to existing non-parties, but also to non-parties that are created after entry

14

of an injunction. See G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 40 (1st Cir. 1980) ("A party and his privies cannot circumvent a court's injunction against the activities they had effectuated before the injunction, through one legal entity, by the creation of another entity through which they, or some of them, continue essentially the same activity."); Marshak v. Treadwell, 595 F.3d 478, 490 (3d Cir. 2009) (affirming contempt judgment for violation of injunction against non-party company "formed to replace and continue the work of [the enjoined defendant]" after the injunction). Indeed, as the Eighth Circuit has observed, "[t]he 'essence' of this rule 'is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" Flight Attendants, 134 F.3d at 920 (quoting Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945)).

The Defendants have a history of creating multiple corporate entities to engage in renovation activities on Target Housing, including at least forty that EPA has identified, all of which lack EPA firm certification allowing them to do so. See Mance Decl. ¶¶ 13-15. Absent an injunction that requires these companies, as well as any the Defendants have formed or may later form, to comply with TSCA, there is substantial likelihood that Defendants will use them to continue to violate TSCA and the RRP Rule.

### IV.     CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court issue a preliminary injunction restraining Defendants, and any corporate entity they have organized or otherwise formed or may later organize or otherwise form, from continuing unlawful TSCA-regulated renovation activities that disturb lead-based paint during the pendency of this case and such other relief as appears just and proper.

Dated: May 24, 2024                                     TODD S. KIM
                                                        Assistant Attorney General

15

/s/ Eric D. Abert
Eric D. Albert
U.S. Dept. of Justice, ENRD/EES
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-2800 (direct)
Eric.albert@usdoj.gov
D.C. Bar # 486253

SAYLER FLEMING
United States Attorney

*/s/ Regan Hildebrand*
REGAN HILDEBRAND
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
Phone: (314) 539-7703
Fax: (314) 539-2287
E-mail: Regan.Hildebrand@usdoj.gov
Bar No. 6326374 (IL)
Bar No. 57438 (MO)

16